1  Alan Law (State Bar No. 268334
   COOPER & SCULLY, P.C.
2  505 Sansome Street, Suite 1550
   San Francsico, CA 94111
3  Tel: (415) 956-9700; Fax: (415) 391-0274
   Email: alan.law@cooperscully.cpm
4

5  Attorneys for Plaintiff
   JO ELLEN YOUNG, Individually and on
6  Behalf of Others Similarly Situated

7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10 | JO ELLEN YOUNG, individually and | Case No. **'20 CV 1804 LAB AHG**
   | on behalf of all others similarly situated; |
11 |                                  |
12 |         Plaintiffs,              | **CLASS ACTION COMPLAINT**
13 |         vs.                      |
   |                                  | Complaint Filed:
14 | GENERALI U.S. BRANCH,            | Trial Date: None Set
   | GENERALI GLOBAL ASSISTANCE,      |
15 | INC., AND CUSTOMIZED             |
   | SERVICES ADMINISTRATORS,         |
16 | INC., D/B/A CSA TRAVEL           |
   | PROTECTION;                      |
17 |                                  |
   |         Defendants.              |
18

19         Plaintiff  Jo Ellen Young  ("Plaintiff"), by and through her counsel of record,

20 brings this Class Action Complaint on behalf of herself and all others similarly

21 situated, and demand a trial by jury for the acts and omissions arising out of

22 Defendants' failure and refusal to indemnify Plaintiff and all others similarly

23 situated under the terms of Defendants' travel insurance contracts for losses and

24 damages sustained following the closures and travel restrictions imposed by

25 various federal, state and local governments due to the COVID-19 pandemic.

26 //

27 //

28

                                    1

# **INTRODUCTION**

1.     This is a class action lawsuit arising out of Defendants' breach of contractual duty to Plaintiff under the terms of a travel insurance policy Defendants issued to Plaintiff.  Defendants contracted to insure Plaintiff and all others similarly situated for pecuniary losses and other damages incurred due to covered events that precluded the insureds from taking their planned trips. Plaintiff's claims, as well as the claims of each proposed class member, are supported by the written provisions of the uniform travel protection insurance policy endorsed and administered to them by Defendants, "Policy Form series T001" (the "Policy"). ***See*** **Policy, attached hereto as Exhibit A**.

2.     Defendants have caused substantial harm to Plaintiff and the proposed class by refusing to issue full or proper reimbursement for losses due to trip cancellations covered specifically by the Policy.  Plaintiff has been entirely denied reimbursement for her Trip Cancellation Claim ("Claim").  Upon information and belief, Defendants have essentially implemented a uniform approach categorically issuing denials to all insureds who submit Claims for virtually any loss arising during the COVID-19 outbreak and pandemic.  Defendants have refused to pay COVID-19 related trip cancellation Claims by insureds under the Policy, regardless of whether said claimants submitted claims requesting indemnity for: (i) the Maximum Limit(s) Per Person or Plan for Trip Cancellation per their policies' Schedules of Benefits; (b) actual damages incurred due to trip cancellations; or (c) the price of the premiums initially paid by the insureds for Policies.  Rather, Defendants are pushing insureds to accept, in lieu of any monetary reimbursement for their Claims, vouchers equal to the amounts paid by insureds for their respective premiums.

3.     Plaintiff brings this action on behalf of herself and all others similarly situated, and seeks to recover compensatory as well as declaratory and injunctive relief.

**PARTIES**

4.    At all times relevant hereto, Plaintiff Jo Ellen Young was a citizen of the state of California domiciled in Culver City, California.

5.    Defendant Generali U.S. Branch is a Maryland corporation which maintains its principal place of business located in New York, New York. Generali Group is licensed to do business in all 50 states and in the District of Columbia.

6.    Defendant Generali Global Assistance, Inc. is a New York corporation doing business as Customized Services Administrators, Inc. or CSA Travel Protection ("CSA"), which maintains its principal place of business in Bethesda, Maryland.

7.    CSA is a California corporation which maintains its principal place of business in San Diego, California.

8.    Defendants may be referred to collectively as "Generali."

**JURISDICTION AND VENUE**

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendants because Generali conducts substantial amounts of business in the state of California.  Generali U.S. Branch endorses insurance policies California residents and is licensed by the California Department of Insurance to issue travel insurance through its subsidiary CSA Travel, a California corporation.

11.    Venue is additionally proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and originated in this District.

## FACTUAL BACKGROUND

12.    On March 11, 2020, Plaintiff purchased a Policy from Defendants to insure against complications, including cancellation, of a trip that she and her husband planned to take to Ashland, Oregon from June 10, 2020 to June 15, 2020 so that they could attend the Oregon Shakespeare Festival.  The couple – who are in their eighties – planned to fly to Oregon for the Shakespeare Festival.

13.    Plaintiff booked her trip using VRBO.com, through which Defendants exclusively provide travel insurance.  VRBO's online checkout process presents customers with the option to purchase, in connection with their VRBO bookings, Generali travel insurance.  Plaintiff opted to pay the additional cost for insurance on her trip and received a Policy.  ***See* March 11 Policy Purchase, attached hereto as Exhibit B**.

### The COVID-19 Pandemic

14.    On January 21, 2020, the novel Coronavirus confirmedly reached the United States when the first American case was diagnosed.  Individuals who contract Coronavirus become infected with the disease COVID-19, which carries potentially fatal implications.

15.    On March 11, 2020, the same day Plaintiff booked her trip, the World Health Organization declared COVID-19 a global pandemic.  The World Health Organization was "deeply concerned by the alarming levels of spread and severity, and by the alarming levels of inaction" in the face of "large-scale severe disease or deaths," as well as "uncontained global spread of the virus." [1]

### Governmental Response

16.    The next day, March 12, 2020, Oregon Governor Kate Brown prohibited large gatherings of over 250 people statewide due to the Coronavirus,[2]

---

[1] Jackie Salo, *World Health Organization Declares Coronavirus a Pandemic*, NEW YORK POST (Mar. 11, 2020, 12:49 PM), https://nypost.com/2020/03/11/world-health-organization-declares-coronavirus-a-pandemic/
[2] State of Oregon Office of the Governor, Executive Order 20-05, OREGON.GOV (Mar. 12, 2020),

and the Oregon Shakespeare Festival cancelled all performances through April 8, 2020.[3]   The announcements did not disrupt Plaintiff's trip, as her scheduled departure date was not until three months later.

17.    On March 13, 2020, President Donald Trump declared a National Emergency.

18.    On March 16, 2020, the President enlisted the help of the CDC to issue the President's Coronavirus Guidelines for America and initiated a "30 Days to Slow the Spread" campaign that called for Americans to take various proactive measures including: avoiding social gatherings of more than ten people for the following fifteen (15) days; practicing "social distancing" of six feet between individuals; *avoiding discretionary travel; and following the directions of state and local authorities*—the campaign specifically instructed Americans: "**Listen and follow all directions** from your state and local authorities."[4]   Americans were also urged to self-isolate if they or anyone they reside with feels sick or tests positive for the Coronavirus.

19.    The President said that the country may be dealing with a number of restrictions through July or August as a result of the virus.[5]   He acknowledged the economy may be heading into a recession.[6]

20.    On March 19, 2020, California Governor Gavin Newsome issued an order for "all individuals living in the State of California to stay home or at their

---

https://www.oregon.gov/gov/Documents/executive_orders/eo_20-05.pdf

[3] Katie Thorsen, *Oregon Shakespeare Festival Cancels Performances Through April 8*, KDRV.COM (Mar. 12, 2020, 1:32 PM), https://www.kdrv.com/content/news/Oregon-Shakespeare-Festival-cancels-performances-through-April-8-568747871.html.

[4] WHITEHOUSE.GOV (Apr. 2, 2020), https://www.whitehouse.gov/articles/these-30-days-how-you-can-help/.

[5]   Michael Collins, David Jackson, John Fritze, Courtney Subramanian, *Social Distancing Through August? Donald Trump Suggests it May Be Needed to Help Confront Coronavirus*, USA TODAY (Mar. 16, 2020, 4:21 PM), https://www.usatoday.com/story/news/politics/2020/03/16/coronavirus-trump-says-social-distancing-may-needed-august/5061517002/.

[6] Sergei Klebnikov, Sarah Hansen, *Dow Plunges 3,000 Points as Trump Says U.S. 'May Be' Headed For Recession*, FORBES (Mar. 16, 2020, 4:20 PM), https://www.forbes.com/sites/sergeiklebnikov/2020/03/16/dow-plunges-3000-points-as-trump-says-us-may-be-headed-for-recession.

CLASS ACTION COMPLAINT
United States District Court Central District of California No.

place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."[7]  Violations of the order were punishable as a misdemeanor. The maximum punishment would be a fine of $1,000 or up to six months in prison.[8]

21.    On March 20, 2020, the City Manager of Culver City, Plaintiff's city of residence, issued a supplemental Public Order calling on Culver City to stay in their residences and limit all activities outside of their homes beyond what is absolutely necessary for essential tasks.[9]

22.    On March 22, 2020, Governor Newsom requested the President to declare disaster for the state of California[10] in order to gain assistance from the President's Disaster Relief Fund, which is managed by FEMA. Disaster assistance programs became available when the President announced the National Emergency on March 13, 2020 and invoked the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121, under which federal authority is granted for disaster response actions.

23.    On March 23, 2020, Oregon Governor Kate Brown issued a statewide stay-at-home order[11] that directed Oregonians to stay home except for essential work or buying food and similar supplies. Violations of the order implicated class C misdemeanor charges punishable by up to 30 days in jail, a fine of up to $1,250

---

[7] State of California Office of the Governor, Executive Order N-33-2010, CA.gov (Mar. 19, 2020), https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/.

[8] Matt Keeley, *California, World's Fifth-Largest Economy, Is in Lockdown as Governor Orders Residents to Stay Home*, NEWSWEEK (Mar. 19, 2020, 10:24 PM), https://www.newsweek.com/california-worlds-biggest-economy-lockdown-governor-orders-residents-stay-home-1493352.

[9] City of Culver City Manager's Office, First Supplement to Public Order Under City of Culver City Emergency Authority, CULVERCITY.ORG (Mar. 20, 2020), https://www.culvercity.org/home/showdocument?id=18882.

[10] *Governor Newsom Requests Presidential Major Disaster Declaration for State's COVID-19 Response Efforts*, CA.GOV (Mar. 22, 2020), https://www.gov.ca.gov/2020/03/22/governor-newsom-requests-presidential-major-disaster-declaration-for-states-covid-19-response-efforts/.

[11] State of Oregon Office of the Governor, Executive Order 20-12, OREGON.GOV (Mar. 23, 2020), https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf.

CLASS ACTION COMPLAINT
United States District Court Central District of California No.

or both.[12]

24. On May 2, 2020, Governor Brown extended Oregon's stay-at-home order, originally set to expire on May 7, 2020 to July 6, 2020.[13]

25. On May 7, 2020, Governor Brown announced that all large gatherings in Oregon would remain canceled through the end of September, and then indefinitely depending on the availability of reliable COVID-19 treatment or prevention. Following Governor Brown's May 7 order, the Oregon Shakespeare Festival announced the official cancellation of the remainder of its 2020 season.[14]

### Plaintiff's Trip Cancellation Claim

26. On May 7, 2020, Plaintiff was forced to cancel the trip, and filed her Claim with Defendants, seeking coverage under the Policy for her losses and damages. *See* **May 7 Trip Cancellation Claim, attached hereto as Exhibit C**.

27. On June 12, 2020, Plaintiff received Defendants' written denial of the Claim ("Denial"). Defendants fully denied coverage, stating:

> We have reviewed the information provided regarding your recent travel disruption. Unfortunately, the cause of loss is not due to an event that is covered by the plan you purchased.

> … Your policy only provides benefits for specific, listed events including Quarantine, and defines Quarantine as, ". . . the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests." However, the Coronavirus outbreak is considered a foreseeable event under any plans purchased on or after January 29, 2020. Therefore, you could be covered if you are diagnosed with Coronavirus, but foreseeable events such as becoming quarantined due to the Coronavirus will not be covered.

*See* **June 12 Claim Denial, attached hereto as Exhibit D**.

---

[12] Maxine Bernstein, *What's the Penalty for Breaking Oregon's New 'Stay Home' Order? Jail, $1,250 Fine or Both*, THE OREGONIAN (Mar. 23, 2020), https://www.oregonlive.com/coronavirus/2020/03/whats-the-penalty-for-breaking-oregons-new-stay-home-order.html.

[13] Kale Williams, *Gov. Kate Brown Extends Oregon Coronavirus State of Emergency to July 6*, THE OREGONIAN (May 2, 2020), https://www.oregonlive.com/coronavirus/2020/05/gov-kate-brown-extends-oregon-coronavirus-state-of-emergency-to-july-6.html.

[14] KOIN News 6 Staff, *Shakespeare Festival Closes Curtain on fall season*, KOIN.COM (May 8, 2020, 4:07 PM),

## The Policy

28.    The Policy provides coverage for Trip Cancellation, among other travel plan protections, stating:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, *if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip* to you or your Traveling Companion, while your coverage is in effect under this Policy.

Ex. A at p. 16 (emphasis added).

29.    The Policy lists the following as "Covered Events:"

> *Your Accommodations at your destination made inaccessible* due to fire, flood, volcano, earthquake, hurricane or other natural disaster. We will only pay benefits for losses occurring within 15 calendar days after the event renders the destination inaccessible.

> For the purpose of this coverage, inaccessible means your Accommodations can not be reached by your original mode of transportation. Benefits are not payable if the event occur or if a hurricane is named prior to or on your Trip Cancellation Coverage Effective Date.

Ex. A at p. 21 (emphasis added).

30.    The Policy's "Covered Events" also specifically provide for coverage in the event of "Being hijacked or Quarantined." Ex. A at p. 19.

31.    "Quarantine" is a specifically listed Definition set forth in the Policy: "QUARANTINE means the enforced isolation of your or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests." Ex. A at p. 9.

32.    The June 12 Denial also stated:

> … However, due to the difficult circumstances, we wish to make an accommodation and provide you a voucher for the full amount of the insurance premium you paid to be applied to a future trip. You do not need to call us, an email will be sent to the policyholder email address on file with all voucher information in the next few business days.

https://www.koin.com/entertainment-news/shakespeare-festival-closes-curtain-on-fall-season/.

CLASS ACTION COMPLAINT
United States District Court Central District of California No.

> … Should you feel your claim has been improperly denied or rejected, we want you to know you may contact the California Department of Insurance with your complaint and seek assistance[15] from the governmental agency that regulates insurance.

33.    Plaintiff's husband, James Canine, contacted the California Department of Insurance (DOI) for assistance with Defendants' wrongful denial of the Claim.

34.    On June 18, 2020, Canine received an email from DOI officer Jorge Zuniga acknowledging receipt of Canine's request for assistance. Zuniga informed Canine that "CSA Travel Protection is not an insurance company" and requested that Canine send over copies of the Policy and of correspondence received from Defendants. See June 18 CA DOI Letter, attached hereto as Exhibit E. Canine sent the requested documents to Zuniga on June 27, 2020.

35.    On July 24, 2020, after Officer Zuniga reviewed the CSA documents from Canine, Zuniga emailed to inform him that the DOI was unsuccessful in resolving Plaintiff's claim dispute. Zuniga advised Canine to, if he wished to pursue the matter further, either 1) file a lawsuit in Small Claims Court; or 2) contact an attorney for legal advice.    ***See* July 24 CA DOI Letter, attached hereto as Exhibit F**.

36.    The events that caused Plaintiff to cancel the trip were Covered Events under the Policy. That those events arose from and/or were related to COVID-19 is an insufficient basis upon which Generali decided to exclude every COVID-19 related event from the Policy's Covered Events.

## **Generali's Complete Denial of All Claims Filed as a Result of COVID-19 Effects**

37.    Generali posted on its website's "Position Statements" webpage the

---

[15] Exhibit D.

1  following message:

2          January 29 - Coronavirus Outbreak
          The Coronavirus outbreak is considered a foreseeable event as
3          of January 29, 2020. This means coverage is unavailable for
          losses related to the Coronavirus if the insurance plan was
4          purchased on or after January 29, 2020.
          COVID-19 was formally declared a pandemic by the World
5          Health Organization on March 11, 2020. For insurance plans
          that exclude pandemics, coverage is unavailable for losses that
6          occurred on or after March 11, 2020. Plan exclusions for a
          pandemic can vary according to your state of residence and the
7          plan you purchased. To review your coverage details, please see
          your Description of Coverage or Insurance Policy.
8          For any plans that include coverage for losses due to sickness,
          we are providing coverage if you, a family member, or a
9          traveling companion contract COVID-19 and plan requirements
          are met. Eligible coverages can include Trip Cancellation prior
10         to your scheduled departure, Trip Interruption, Travel Delay,
          Medical and Dental, and Emergency Assistance and
11         Transportation coverage during your trip.
          Customers are strongly encouraged to read their Description of
12         Coverage or Insurance Policy for details regarding their
          available coverage.
13
14         *See* **Defendants' Coronavirus 'Position Statement,' attached**
15  **hereto as Exhibit G.**[16]

16         38.    The following is also posted on Defendants' webpage titled "Buying
17  Travel Insurance in a Post-Pandemic World:"

18         Our plans do provide coverage if you, a family member, or a
          traveling companion contract COVID-19 and plan requirements
19         are met.    **Let's be perfectly clear though**: Travel insurance
          will not cover you if you cancel or interrupt a trip out of fear of
20         getting sick or for government imposed travel bans or
          restrictions – even in the case of a pandemic like COVID-19.

21
22         *See* **Defendants' 'Post-Pandemic World' Webpage, attached hereto as**
23  **Exhibit H.**[17]

24         39.    The language of the Policy is unambiguous. The Policy is a fully
25  integrated contractual agreement. Defendants have breached the contract by failing
26  and refusing to indemnify Plaintiff for the losses she incurred as a result of the
27
28  ─────────────────────
[16] https://www.generalitravelinsurance.com/position-statements/coronavirus.html.
[17] https://www.generalitravelinsurance.com/travel-resources/post-pandemic-travel-insurance.html#covid.

unavoidable cancellation of her travel plans due to a Covered Event.

40.    Instead of honoring the terms of the Policy, which is a binding contract, Generali is denying legitimate requests for refunds and instead pushing vouchers on customers. Each voucher offered is only worth the premium amount paid by the Policyholder.

41.    Plaintiff and other Claimants suffered monetary losses as a result of their forced trip cancellations. Such losses far exceed the amounts of their respective Policy premiums, and even those amounts they cannot recover from Defendants in cash but rather only in voucher form.

42.    Defendants have attempted to appease unhappy Claimants who have expressed anger with the voucher program, by sending an email announcement that the vouchers can be applied toward either: a) any new travel insurance plan until May 31, 2021; or b) December 31, 2022;[18] however, this does not in any way mitigate the losses actually sustained. The vouchers are still worth nothing more than the premiums paid for Policies intended to cover damages actually incurred in connection with the cancelled trips at issue. ***See* Exhibit I Voucher Offer Update.**

43.    Plaintiff incurred losses due to a trip cancellation that was caused by Covered Events under the Policy despite said events arising out of COVID-19 related circumstances.

44.    The disparity of the financial impact of Coronavirus on Defendants and on its customers, everyday consumers like Plaintiff, is enormous. Plaintiff and her husband are among thousands of similarly situated Generali customers who deserve full, proper refunds and who need such refunds now more than ever.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure Federal Rules of Civil Procedure

---

[18] *See* July 18 Voucher Offer Update, attached hereto as Exhibit I.

23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), defined as follows :

**Nationwide Class**
All persons located within the United States who purchased Generali travel insurance plans accompanied by the Policy, have incurred out of pocket Trip Cancellation expenses, and were prevented from taking or completing a trip as a result of a covered event during the COVID-19 pandemic.

46.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, a State Class consisting of the following:

**California State Class**
All persons located within the State of California who purchased Generali travel insurance plans accompanied by the Policy, have incurred out of pocket Trip Cancellation expenses, and were prevented from taking or completing a trip as a result of a covered event during the COVID-19 pandemic.

47.     Excluded from the class(es) are Defendants, any entities in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

48.     **Numerosity. Fed. R. Civ. P. 23(a)(1)**.  The Class is so numerous that joinder of all members is impracticable. Due to the nature of the insurance involved, the members of the Class are geographically dispersed throughout the United States. While the precise number of Class members is information not readily available at this time, as only Generali possesses the data to determine a numerical figure to indicate the Policies sold throughout the US that have resulted in myriad claims Generali has received from consumers who would qualify as Class Members for purposes of this action, Plaintiff has reasonable belief that there are thousands of potential members in the Class. Generali states on its website that it has a presence in 50 countries in the world and earned a total premium income

more than € 69.7 billion (approximately $80 billion) in 2019, serving 61 million customers worldwide.[19]

49.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class she seeks to represent because Plaintiff and all Class members purchased identical coverage from Generali containing identical language regarding Trip Cancellation and Covered Events, and all Class members have been improperly denied coverage.

50.    **Adequacy. Fed. R. Civ. P. 23(a)(4)**. Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class. Plaintiff will fully and adequately protect the interests of all members of the Class.

51.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3)**. The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, namely: whether the events caused by the emergence of the COVID-19 pandemic constitute Covered Events under the Policy; whether the effects of any disaster or emergency declarations, stay-at-home directives, "stop the spread" initiatives, or any other national health or safety warnings issued as a result of the COVID-19 pandemic that precluded Class Members from embarking upon or completing trips for which they purchased Policy coverage, trigger Covered Events under the Policy's terms; and whether the Policy requires Generali to reimburse Policy holders for expenses incurred as a result of trip cancellation due to events caused by the COVID-19 pandemic national disaster.

52.    **Superiority. Fed. R. Civ. P. 23(b)(3)**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate

---

[19] https://www.generali.com

1   actions by individual members of the Class would impose heavy burdens upon the
2   courts and would create a risk of inconsistent or varying adjudications of the
3   questions of law and fact common to the Class. A class action, on the other hand,
4   would achieve substantial economies of time, effort, and expense, and would
5   assure uniformity of decision with respect to persons similarly situated without
6   sacrificing procedural fairness or bringing about other undesirable results.

7       53.    The interest of the members of the Class in individually controlling
8   the prosecution of separate actions is theoretical rather than practical. The Class is
9   cohesive, and prosecution of the action through representatives would be
10  unobjectionable. The damages suffered by the Class are uniform and generally
11  formulaic, and the expense and burden of individual litigation could preclude them
12  form fair redressal of the wrongs done to them. Plaintiff anticipates no difficulty in
13  the management of this action as a class action.

14      54.    A representative action under Cal. Bus. & Prof. Code §17200 et seq.
15  and Cal. Bus. & Prof. Code §17500 et seq., is also appropriate to secure restitution
16  for all affected members of the Class and the general public and to obtain
17  injunctive relief.

18      55.    Plaintiff is entitled to an award of attorney's fees and costs in
19  prosecuting this action against Defendants under Civil Code §1780(e). Plaintiff is
20  also entitled to an  award of attorney's fees and costs pursuant to Code of Civil
21  Procedure §1021.5, because: (a) a successful outcome in this action will result
22  in the enforcement of important  rights affecting the public interest; (b) This
23  action will result in the cessation of  business practices which are unlawful,
24  unfair, or fraudulent business acts or practices, and will result in restitution and/or
25  disgorgement of monies which Defendants should not equitably retain, thereby
26  providing significant benefit to the Class and the general public; and/or  (c) Such
27  fees should not, in the interest of justice, be paid out of any recovery.

28

## INJURY

56.     By way of the above-detailed conduct, Defendants caused actual harm, injury-in-fact, and economic loss to Plaintiff and all other Class Members. Plaintiff was injured in the following ways:

a.      Plaintiff paid Defendants $150.85 for the Policy to insure against trip cancellation and other misfortune for a trip that Plaintiff and her husband planned to take to Ashland, Oregon between June 10, 2020 and June 15, 2020;

b.      All other Class Members paid amounts to Defendants for Policies to insure protection for their travel plans;

c.      As a result of quarantine and/or other Covered Events that rendered inaccessible the travel destinations of Plaintiff and Class Members, they did not travel and as such incurred losses and damages in connection with trip cancellation and other fees; and Plaintiff and all Class Members have been deprived of benefits intended to be afforded by the Policies issued by Defendants, including the use of their money and interest, requiring compensation and restitution.

## COUNT I: BREACH OF CONTRACT

**(individually and on behalf of the Nationwide Class or, alternatively, the State Class)**

57.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

58.     Plaintiff and the class purchased insurance from Defendants and were thereupon issued the Policy.

59.     The Policy is a valid and enforceable contract between Generali and all policyholders, including Plaintiff and class members.

60.     Plaintiff   and   the   class   members   substantially   performed   their

15

obligations under the terms of the Policy and Class Policies.

61.    Plaintiff and the class members suffered losses from events that should be reimbursed as results of Covered Events under the Policy.

62.    Defendants have failed to compensated Plaintiff and class members for their respective losses as required by the Policy.

63.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200

### (On behalf of the State Class)

64.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

65.    California Business and Professions Code §17200 *et seq.* prohibits acts of "unfair competition," which it defines as including "any unlawful, unfair or fraudulent business act or practice...."

66.    Defendants' conduct as described above, constitutes "unfair" and "unlawful" business acts and practices.

67.    Defendants have violated and continue to violate Business and Professions Code§17200's prohibition against engaging in "unfair" and "unlawful" business acts or practices, by, inter alia, breach of contract as well as tortious breach of the covenant of good faith and fair dealing and otherwise acting in bad faith by denying the claims for coverage by Plaintiff and each member of the Class as alleged above

68.    Defendants' conduct does not benefit competition or consumers. The injury to competition and consumers is substantial, which was not outweighed by the utility of Defendants' conduct.

69.    Plaintiff and each member of the Class could not have reasonably

avoided the injury each of them suffered.

70.    The severity of the consequences of Defendants' conduct, as described above, outweighs any justification, motive, or reason therefore and is immoral, unethical, oppressive, unscrupulous, and offends established public policy.  Defendants' conduct results in an unfair advantage that significantly harms competition in the insurance marketplace.

71.    Plaintiff and each member of the Class suffered injury in fact and lost money in the form of premiums paid to Defendants.

72.    For the foregoing reasons, Plaintiff and each member of the Class are entitled to recover from Defendants restitution of monies paid, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorney's fees and costs), and any other relief allowed by law and deemed just and equitable under the circumstances.

73.    By this action, Plaintiff and each member of the Class request that Defendants be ordered to make restitution of any money, property, goods or services that may have been acquired through their violation of Business & Professions Code §17200 as alleged herein.

74.    Pursuant to Code of Civil Procedure § 1021.5 of the Code of Civil Procedure and the Court's inherent equitable power, Plaintiff and each member of the Class seek recovery of their costs of suit and reasonable attorney's fees.

## COUNT III: FALSE AND MISLEADING STATEMENTS IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500

### (On behalf of the State Class)

75.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

76.    With intent directly or indirectly to dispose of personal property and to perform services and to induce the public to enter into obligations thereto, Defendants caused to be made and disseminated before the public in California

statements  concerning such personal property and services that were untrue and misleading, and which by the exercise of reasonable care should be known to be untrue and misleading. That  is, Defendants advertised their untrue and misleading offer, among other ways, on websites and on the internet directed at consumers.

77.    Members of the public, as reasonable consumers, were likely to be deceived by Defendants' statements made to the public. The statements were not mere puffery. Defendants are insurers registered to provide insurance in California and elsewhere and are services and promises.  Plaintiff and each member of the Class were damaged by Defendants' misrepresentations and false statements.

78.    For the foregoing reasons, Plaintiff and each member of the Class are entitled  to  recover  from  Defendants  restitution  of  monies  paid, injunctive  relief, declaratory relief, the cost of bringing this action (including reasonable attorney's fees and costs),  and  any  other  relief  allowed  by  law  and deemed  just  and  equitable  under the circumstances.

79.    By this action, Plaintiff and each member of the Class request that Defendants be ordered to make restitution of any money, property, goods or services that may have been acquired through their violation of Business & Professions Code § 17500 as   alleged herein.

80.    Pursuant to Code of Civil Procedure § 1021.5 of the Code of Civil Procedure and the Court's inherent equitable power, Plaintiff and each member of the Class seek recovery of their costs of suit and reasonable attorney's fees.

## COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF

### (Individually and on Behalf of the Nationwide Class or,

### Alternatively, the State Class)

81.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

82.    An actual controversy has arisen and now exists between Plaintiff and

18

the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy.

83.    Plaintiff contends that Generali has breached the Policy by failing to timely pay Class Members for their respective losses for covered damages.

84.    Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court to declare Generali's conduct unlawful and in material breach of the Policy so as to avoid future controversies that would allow for continual injustices such as the one at issue here, where huge insurance companies take advantage of masses of consumers.

85.    Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy; and (2) ordering Defendant to comply with the terms of the Policy, including payment of all amounts due to each respective class member under the stated Policy coverages that were extended to them upon purchase.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a)    That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)    For a judgment against Defendant for the causes of action alleged against it;

(c)    For compensatory damages in an amount to be proven at trial;

(d)    For restitution pursuant to Business & Professions Code §§ 17200 and 17500;

(e)  For statutory, treble and/or punitive damages to the extent permitted by law;

(f)  For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(g)  For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

(h)  For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(i)  For Plaintiff's attorneys' fees;

(j)  For Plaintiff's costs incurred; and

(k)  For such other relief in law or equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  September 14, 2020                    Respectfully submitted.

By: _____

ALAN LAW
State Bar Number : 286334
COOPER & SCULLY, P.C.
505 Sansome Street, Suite 1550
San Francisco, California 94111
Tel: 415-956-9700; Fax: 415-391-0274
Email: alan.law@cooperscully.com

Attorneys for Plaintiffs JO ELLEN YOUNG, Individually and on Behalf of Others Similarly Situated